Good morning. My name is Anne Traum, and I represent Mr. Lopez. I'd like to reserve five minutes for rebuttal. I will try to keep my eye on the clock and keep track of that. My client is asking this court for basically two different forms of relief today. First, he's asking this court to vacate his convictions on Counts 3 and 4 because there is no proof or insufficient proof in the evidence that he possessed drugs with the intent to distribute them. And two, that's on Count 4, and two, that he possessed a gun in furtherance of that drug crime, which is Count 3. Alternatively, he asked the court for a new trial on the seventh issue because it was highly prejudicial to have the alien and felon in possession counts and the illegal reentry counts tried with the drug-related counts. And this is particularly so in the case that I cited in my 28-J letter, which I hope the court received, which is the Jarwara case. Well, we did on that, and maybe if I'll have you jump in on the Joinder issue. On the felon issue, your client admitted the felony, correct? Correct. So the jury never knew that he was a convicted felon, correct? They knew that he was a convicted felon by stipulation. There was not separate proof that he was a felon. It was stipulated. The stipulation was simply that he admitted that he was a felon, and those stipulations were provided to the jury along with some other issues that were stipulated to, I believe, at the outset of the trial. So there was not independent proof that he was a felon. Because sometimes the stipulations are in a way that a person has, you know, they just, you know, I remember when I was a trial judge, people would stipulate to it, but they didn't necessarily know that the person was convicted of a felon. You just, the way the jury was instructed, it was different. I don't believe that's the way that they did it, and I will find that site in the record where it was stipulated to. It was early on, and my understanding was that it was a stipulation that he was a felon, so that that element had been proved. But that meant that the government was not required to put in the judgment, et cetera, to actually put on evidence as to that fact. But even setting apart the felon issue, we have what I think is even much more inflammatory and really unrelated to the drug-related charges in terms of telling the story, which is the fact that he is an illegal re-entrant. He was a deported alien. I guess, I don't know, why is that worse than being a drug dealer and someone that has a gun? Why is that worse? Well, I mean, if I were, you know, I'm just sort of taking the common sense of when you have to assess prejudice, I think, you know, I mean, there's, you know, it would be great to have a trial with nothing incriminatory against you, but he's on trial for drug charges and having a gun and all of that. So they're going to know, you know, they're going to hear all of that evidence. Being an alien, I don't see how, I don't see the prejudice of that, that I do in terms of all the evidence that has to come in anyway. I think there's basically three points that I need to make to that. First of all is being an alien can be highly inflammatory, especially when you are someone who the jury knows is not supposed to be here, period. Why are you even here? So that's not just inflammatory in itself, but it's coupled with the felon fact, so that now he has two counts against him, not just one. But also there's the other issues here, which is you have basically these status offenses, the felon in possession, alien in possession, and illegal reentry aspect count, which are essentially the slam dunk charges, in my view, tried together with the weaker cases, and that's why. Why didn't he just admit being an alien? Because he didn't put on any evidence to the contrary and just take that issue away from the jury. Well, you still have the returning without reentry. I mean, there's a possibility that he could have admitted the whole count, but he didn't. And he asked that they be bifurcated, and it certainly would not have been such a big deal to, I mean, to either try them separately or bifurcate them so that those counts don't come in until they've already dealt with the weaker counts, which are the drug-related counts. And the problem is that you have these, what I call the slam dunk counts versus the weak counts being tried together. That's what's prejudicial. And you have the fact that he's being an alien and a felon. You have the danger, the very real danger. Isn't he also an alien in possession of a weapon, too? Yes. Well, I guess the strongest argument against, you know, on the judicial economy from this standpoint, you know, the Jawa case, is that how you say it? Whatever. On that case, when I first looked at it, I thought, oh, my gosh, these are all immigration things. Why would they say that, you know, you can't try those together? Although they did find it to be a harmless error, even though they did try them together. Except they were two discrete incidents. As opposed to here, we've really got one set of operative facts. And based on all of those operative facts, that's what the charges arise out of. And that, and so, yeah, the damages that they would have to do, even though all these facts were the basis for it, the prosecution would have to do a whole other separate trial. And then I suppose that arguably you wouldn't want the alien in possession of a weapon tried with the, you know, the other, I mean, you'd have to do a whole separate trial. Well, not necessarily. Because if you, in terms of telling the story, and I would like to get to the story, because I think that's really where the heart of this case is, and it actually helps in terms of the severance issue as well. The story, you don't need the alien part to tell the story. And in fact, they had to prove possession of the gun, which was essentially what he was contesting on the felon in possession. He was contesting possession. They had to prove that to prove the drug-related counts. So there's no, it seems very simple to me. You try the drug-related counts. If he's convicted on those, they would have already proved possession of the gun. Then you just bring the jury back and you say he's an alien and a felon, and here's some additional evidence on the illegal reentry. Done. I mean, that seems to me very efficient and simple and elegant way to deal with this. And that's exactly what the Wynn case was talking about, is that this is highly disfavored to have this kind of evidence coloring other counts, and particularly so when the evidence of guilt on the drug-related crimes, counts three and four, is not overwhelming. And so you have the real danger of these other facts, very highly prejudicial facts, tipping the balance in favor of conviction. And the way to sort that out, and the Wynn talks about the various circuits and how they've dealt, how they've addressed this, and bifurcation is certainly one of the most elegant ways and very simple ways to deal with this. It probably would have taken 20 minutes after, if they find possession, it just takes a matter of minutes, certainly just hours at the most, but I don't even think that much, to just put on this additional evidence. But that way you would have not had the danger of a taint. So I would like to focus to those drug-related charges where we view the evidence as being insufficient. And I really think that in breaking these down, it's back to basics, which is the first thing that they have to prove in proving both of these charges is that drugs were possessed by my client. The best fact they have on that is that the drugs were in the car and the car was his. And he's near the car, too, right? Pardon me? He's near the car, too, isn't he? He ran from the car. We know that he was in the car for a brief period as a passenger. They apprehended the driver, who didn't run away from the car. One officer stayed with the driver. The driver was briefly detained and not booked and not charged. Okay. I guess what I would say there, and which I'd like you to respond to, is obviously those are, you know, I think it was laid out a lot of things. There were no fingerprints. There was no this. There was no that. All right. And those are all arguments that you make to a jury, and you hope that your client's found not guilty. But when we look to sufficiency of the evidence, I'm looking at a car that is registered to your client, that your client was in the car. He runs from the car. The drugs are found in the car. I believe there was also expert testimony about how it was packaged, what the, you know, what the amount was, all of that sort of thing, which would go to the sale. How do we get, how do we, you know, yeah, that's maybe, those are all things I would certainly argue, but how do we say that there was not any evidence? I mean, there are inferences that can be made from all of those things, and the jury obviously made them. I think there's a few points.  Would we have to, counsel, would we have to conclude that no rational jury could conclude that he possessed the drugs that were in the car? Is that what? Yes. Isn't that the standard? The standard is viewing the light most favorable to the jury's verdict, that no rational jury could have found that he possessed the drugs in the car. But this is the evidence here. Well, what's your best argument in this term? On that standard, what's your best argument? My best argument, I cited the case today, the Delgado case, which I cited before. Judge Gould, I'm sorry, you don't have it, but the other judges do, which is an old case from 1964. But it goes to this important principle, which is that they have to prove, the government has to prove that he had actual or constructive possession of the drugs. Mere speculation about whose drugs they were is not sufficient. And in Delgado, it was a case where drugs were found in the nightstand at a woman's home. She and the man she was living with were both charged with possession of the drugs, but speculating as to whose drugs they were was not sufficient. And the fact that she lived there and that she had access to the nightstand was not sufficient to prove that she had actual or constructive possession. Now, we know he did not have actual possession of the drugs based on the evidence in this case. So we're left with constructive possession. And the jury was instructed on the actual constructive possession issue at page 460 of the record in the instructions. So here we have no prints, no drugs on him, no residue, as they found in other cases. We have no one seeing him handle drugs. We have no way to exclude the possibility that the driver of the car, the person who's been in the car the entire period from start to finish of the period that's covered in the trial, we have nothing to exclude the driver. Basically, the government has asked for inferences to be made based on the expert testimony that this person is a drug dealer. And importantly, I think it's to view the expert testimony that much of the expert testimony goes just to the drugs themselves. And it doesn't tell you something about the person, about whose they are. It tells you about the person that owns those drugs. And so on that issue, we have the quantity of the drugs, the size of the rocks that they were in and the area where they are. Well, that all goes to both of the driver and Lopez. We have the cash on Lopez and the gun attributed to Lopez. Now, those are damaging facts, but I don't think that the cash alone and the gun make – They'll close the gap to put the drugs on him. But we have, what, over $2,000, right? Correct. And it's the expert testimony says that about the kind of how drugs are sold and what denominations you would have, too. And he happens to have those denominations. So if you take those inferences in favor of the verdict, you know, you can't say that that doesn't mean anything. Well, the problem is it doesn't close the gap to actually give him – well, it certainly doesn't give him actual possession of the drugs. And it doesn't close the gap to give him constructive control, the ability to having exercised dominion and control over these drugs. Because if the inference is he's a drug dealer, drug dealers have guns, because he's a drug dealer, it's more likely that the drugs were his. But I don't think it closes the gap to show that he actually exercised dominion and control over the gun – I mean, I'm sorry, excuse me, over the drugs. It's not like it's his house and he's the only person there who has access to the house. The problem is that there's a driver in the car. The driver in the car has been there the entire time. We have no testimony telling us who usually drives this car, where – you know, how long this person has been. We have nothing putting our guy in – putting Lopez in the car earlier. We have no incriminating statement about the drugs. We do have an incriminating statement about the gun. And we also have the officer, Officer Umana, who saw him stash something under the seat. No one is – no one has testified that he reached for the console. There's absolutely no testimony to that fact. So the fact that you're a drug dealer does not, on this – at a particular moment, mean that you have drugs in your possession that you're actually exercising control. And it certainly does not exclude the driver from being that person. And what the Delgado case tells us is mere speculation about whose they are, just based on joint access, is not sufficient. In Delgado – I think I remember Delgado. Am I right that's where the nightstand is, sitting there in between the husband and wife? Okay, but here, if he's the sole owner of the car, does that make a difference on constructive possession? Whereas the driver, I guess, has access to the car, but the driver wasn't a co-owner of the car, right? The driver's not a co-owner of the car, but the driver is the person who is driving the car. He has the keys to the car. He's been sitting in the car the entire time that we have testimony covering – for the whole period that we're covering in this trial. And so you have the driver, I think, driving a car and having the key to the car and being in the car the entire time is exercising control over the car. So even though he's not the owner, I don't think – I mean, this is – you have to have knowing possession. This is not strict liability. Just because drugs are found in your car and somebody else is driving your car, it doesn't make you guilty of possessing the drugs, particularly when there's joint access. But the question – that's correct, I think. But the question is, could a rational jury decide from all the circumstances that he knew the drugs were there and constructively possessed them, I guess? Well, the problem is that there's no – I mean, there's no evidence of drugs on his person. There's no one who's seen him handling drugs. There's nothing – he is a person who is highly suspicious because he has been seen with a gun and has a lot of cash. And that indicates, to the expert at least, that he might be a drug dealer. But I don't think that gets you the full distance. I don't think that a jury, absent – there is absent any evidence that he actually controlled the drugs or exercised dominion over them, and certainly absent any evidence that they're found on him, that he actually possessed them, I don't think the jury can make that finding. So before I sit down, I would like to just point out that the 924C, sort of building on top of this, goes to the gun. And as this case was tried to the jury, this was a brandishing case, where there was a drug deal happening in the street, and then he was waving a gun around. If this was a brandishing case and a drug deal actually happened in the street, which there's no evidence to that effect, then the need for an instruction on intent is lesser. And the ability to find that there was in furtherance, the possession was in furtherance. Well, now, this is a plain error review because you didn't propose any other – you didn't propose anything else, correct? Correct. I understand that. But now, on appeal, this is not being pitched as a brandishing case based on a drug deal in the street because there's no evidence of that effect. Now it's being pitched as a proximity nexus case because the gun was under the seat and the drugs were in the console. And I don't think, based on Mann, and particularly on Mann, which talks about that the contemporaneous possession of a gun and near drugs does not prove a 924C count. It is not strict liability. There actually has to be a connection, a proven nexus with specific facts that connect the two and the intent of the – the intent to have the gun for the possession. So I'll sit down and reserve the balance. All right. We'll reserve the balance. Thank you. Thank you. Good morning, Your Honors. Christina Brown, Assistant United States Attorney from the District of Nevada. Can you hear okay, Judge Gould? Is she talking loud enough? Yes, I can hear perfectly. Thanks. Okay. Just keep your voice up because I'm having a little trouble right here. Thanks. Thank you. Your Honors, considering first the appellant's claims as to the sufficiency of the evidence, the defendant claims that the evidence was insufficient to support the jury's finding of guilt on possession with intent to distribute and also the 924C charge. But in fact, there actually was a great deal of very strong evidence against the defendant on both of those counts. As Judge Gould has pointed out, in order to prevail here, the defendant has to establish the evidence taken in the light most favorable to the government was so lacking that no rational trier of fact could have found him guilty on that charge. I'm not sure in terms of ‑‑ I think we know what all the facts are in this. Do any of the judges want to hear any more on this argument? I'm actually more interested in the evidence on whether the gun was in furtherance of the drug deal. All right. Why don't you address that then as opposed to the other areas? Yes, Your Honor. Specifically with regard to the possession of the firearm in furtherance of the drug trafficking crime, of course the evidence in this case closely overlaps. Much of the evidence tended to prove guilt on several of the charges. So I would say that there were at least 11 pertinent facts, not only that the defendant was in possession of the drugs in question and that he intended to distribute them, but also that the firearm was used in furtherance of that. And I would just like to briefly set forth what those facts are. First, the drugs were found in a car that belonged to the defendant. He admitted that. The drugs were packaged inside a console in the defendant's car. They were not simply laying out. They were not found in the tin can in a compartment in the driver's door or on the floor. They were inside a console in the defendant's car. Of course, the jury heard evidence about the form of those drugs and the significance of the form of those drugs through the expert's testimony, how they were broken up into varying sizes, which comported with the way that commonly street traffickers deal in drugs, the $10 pieces and $20 pieces. And there was evidence that, in fact, there were perhaps one or two $40 or $50 pieces. And he said the significance of that was that's the way the drug trade on the street takes place. The drugs were immediately accessible to the defendant in the center console. So, again, if one is protecting a personal stash, as the defendant said, I didn't possess the drugs, but if I did, this was for personal use, that's not a likely place one would keep 131 doses or single-use doses of a personal stash right there in the center console. Again, the fact that he had nearly $3,000 cash on his person in the denominations that, Judge Callahan, you've pointed out, there were 62 $20 bills. There were 15 $100 bills and then some other smaller bills. Again, those were mixed up. They weren't organized in any fashion. The defendant was unable to have any coherent explanation for how he came into possession of that money. It's a simple question. When he was asked by the officers, how did you get this money, he had varying explanations. First, he said he was dealt in cars. When they asked him, where do you work, he was unable to provide an explanation. Then he said he painted houses. Then he said he got the money gambling. He couldn't provide the name of the casino where he had been gambling. Then he said he belonged to, the money belonged to his wife. Officers went and attempted to return the money to his wife. They couldn't find, they couldn't validate that address. No one at trial said this money belongs to us. So, clearly, the defendant is covering up why he has this money. He has no logical explanation for it. He's located at 3.30 in the morning in an extremely high drug trafficking area. He's engaged in an altercation on the street where he does brandish a weapon. And he's got a lookout. The driver of his car is sitting in the 7-Eleven parking lot. And when these beer delivery drivers are calling the police reporting this altercation, the individual driving the defendant's car alerts the defendant. This was testified to at trial. And at that point, everyone scattered. The car in the street took off. The defendant went into an apartment complex. And very shortly thereafter, got into this car as a passenger. And the police arrived. And then, subsequently, the car was pulled over. What does the defendant do? Does he stay and offer an innocent explanation? The gun wasn't mine. I don't know anything about these drugs. No. He bails from the car. He runs blindly into traffic across Las Vegas Boulevard, almost being struck by a police officer. So those are the errors. And where's the gun? The gun was located under the passenger seat. And there was testimony by the first officer that he encountered this car at a stop sign. And he turned and he looked over and he saw the defendant briefly look over at him. And they were window to window. That is, the driver of the defendant's car was window to window with the police officer. And the defendant looked over briefly and then looked straight ahead. The driver never even looked at the police car. And they're just sitting there at a stop sign. The officer said that the defendant bent down as if to stick something underneath the seat. So, in any case, then very shortly thereafter, of course, they're able to subdue him, ask him questions about, you know, this money and so forth. And all of these facts I submit to the court were relevant in the jury's determination, not only that he was in possession of these drugs, not only the facts alone, but also the expert testimony, which, although standing alone, may not be. What did the defendant say about the gun? He said, if you don't got the gun, you've got nothing on me. That's what he said to the police officers. Now, those police officers that were questioning him across the street didn't yet know that the drugs had been located in the car, so he wasn't asked about the drugs by these officers. But, Your Honors, I submit that all of these facts in totality certainly supported the jury's finding that not only did he possess these drugs, that he did so for the purpose of distributing them, and that the firearm that was used was done in furtherance of that drug trafficking crime. Now, I tried this case, and I did state in closing argument that it was a reasonable inference that, based on all of the facts I've just laid forth for the court, that he was engaged in a drug deal in the street there. I think that's a reasonable inference in the court. There was an objection to my saying that, and the court said, that's a reasonable inference from the evidence, but we weren't required to prove that. This 924C charge was not charged as an act of employment. In other words, in reviewing the sufficiency of the evidence, the court looks to the nexus to determine the defendant's intent, whether he intended to use his firearm in furtherance of the drug trafficking charge. And I've cited the Robinson case. There is an addition, another case out of, I believe it is the Seventh Circuit, that I made pose in counseling. Let me ask you a question about the furtherance in the furtherance instruction. You know, on this record, appellant didn't object, so it's for plain error, and they didn't offer any other type of instruction. But I think I've seen this one other time. Is this something, I don't think we have anything published in the Ninth Circuit. There is, I believe, in another circuit. But is this coming up a lot now, whether in the furtherance is, requires other explanation? I know that your argument is in the furtherance it says what it means and that people can understand it. The appellant's argument is that it needs more explanation and that it would be confusing. What I was able to locate on that, Your Honor, were two published cases. If there are more out there, I was unable to locate them. The Robinson case is one that says in furtherance of is a common meaning. It's commonly understood, and I've cited that in my brief. There is, in addition, another case. That's not Ninth Circuit, though, right? No, it is not. I found nothing in the Ninth Circuit, published or unpublished, talking about whether there is a need to define in furtherance of. Of course, I've cited lots of Ninth Circuit cases talking about other terms that didn't need to be defined, but that's not the Court's question. The Castillo case, if I may just cite this case, it is at 406 Fed Third 806. It's a 2005 case, Seventh Circuit. The facts are a little bit different, but ultimately the Court said that there is no plain error in failing to define in furtherance of, again, because it's given its plain, everyday, common language meaning. It's not ambiguous. And I think that in reviewing that ---- Could you give me that citation again? Yes, sir. Just the numbers. 406. 406. Fed Third 806. Thanks. And the facts are not exactly the same as here. Is this coming up a lot? I mean, is this a regular trial issue? I'm just curious. I'm not aware of it coming up a lot. Frankly, this is the first 924C case that I have tried, so it's not a good person to ask. It's probably not a good person to ask. But, no, I'm not aware through talking with my colleagues and so forth of it coming up a lot. I think that in reviewing this and determining whether there's plain error, error, of course, is a deviation from a legal rule. But in order to be plain error, the law has to be clear or obvious under United States v. Perez. And, of course, here you don't have a published Ninth Circuit case or, in fact, any case that I located that says it's required that you define this, which distinguishes it from some of the other case law talking about, you know, it's plain error not to define use or carry the other component of 924C. Again, the court has to find that it affected substantial rights and that the error was so serious that it affects the fairness and integrity. Well, let me take you over to the joinder issue or the bifurcation issue. You know, appellants made an argument that, you know, if it were bifurcated, all you do is you send the jury out. They don't need to know all that prejudicial information. They could, you know, decide that. Then after they find the defendant guilty, then they can come back in and they can decide if he's an alien, they can decide if he's a felon. What's wrong with that? Well, what's wrong with that, first off, is that that was not what was requested below. And further, in reviewing in preparation for this hearing, the transcripts and the pleadings below, the magistrate court was first asked to sever these counts. And in the motion that was filed originally, the defendant was asking for three trials. Then that motion was denied. Then that order of the magistrate court was appealed to the district court. And in the appeal, the defendant asked for four trials. So never before was it presented either to the magistrate judge or to the district judge, we want two trials, as the appellant today says, should have been done and could have easily been done. Based on my reading of the pleadings and the relief requested below, that was never even requested. They never requested a bifurcated trial. He asked for separate trials on four separate trials on all of these. In the court, in reviewing, of course, the fact that, as you pointed out earlier, all of these acts derive from the very same transaction. They all occurred on August 11th of 2004. Evidence of some of these would have necessarily been admissible to prove others. To put, for example, to just try the illegal reentry alone, as the defendant had requested alone below, would have taken everything completely out of context, would have created an absolute whitewashing of the facts of why the police were ever called, why the defendant was ever stopped, what the conversation ever was, and would have created the impression to the jury that the first words the police officers ever spoke to this individual was, where are you from, where's your paperwork? Did he – the admission of the element of being a felon, was the jury told he was a felon, or were they just told that a certain element was satisfied and they had to decide X, Y, and Z? On page 150 of the excerpts of record is the stipulation. And what the stipulation reads is, and I'm going from memory here, but it doesn't say that he's a convicted felon, that he stipulates that he has been convicted of an offense punishable by more than one year in prison. Now, in candor to the court, in closing, both the defendant and the prosecution referenced that he had admitted he was a convicted felon. The instructions that were given, I believe, stated that he had to find that he had been convicted of an offense punishable by more than one year. So I don't believe the instructions themselves actually said a convicted felon. And the stipulation read, as I revealed to the court. All right. Thank you. Can I return, please, to the issue of the sufficiency of the evidence to show the weapon was in furtherance of the drug deal? Now, am I correct that there's precedent saying that if someone's arrested and they have drugs with intent to distribute them and they have a weapon, that something more needs to be shown to prove the in furtherance of? Not just the conjunction of the possession of the drugs and the possession of the weapon. So what does the precedent say else has to be shown? Your Honor, what the precedent says is that mere possession of a weapon, either in the same location or at the same time that a drug trafficking offense takes place, is not sufficient to prove in furtherance of. What we have to show to demonstrate the defendant's intent, and again this comes up in the case law reviewing the sufficiency of the evidence, is a nexus. And the nexus talks about the proximity of the weapon to the drugs and the defendant himself, the accessibility of the weapon to the defendant, and the strategic location, again talking about how close are the drugs, how close is the gun. And the cases talk about that and analyze that, Kraus, Mann, Rios. There's another case that talks about, and I've cited this in my brief, United States v. Lomax. It says a fact finder is certainly entitled to come to the common sense conclusion that when someone has both drugs and a firearm on their person, the gun is present to further drug trafficking. Now, the cases where they have not found sufficient evidence, such as Rios and such as Mann, there wasn't evidence that the drugs were close to the gun or that in any way they were together. For example, in the Mann case, there was a gun in a locked car. The key to unlock the gun was in a sleeping tent at this campsite. It was in a sleeping tent. However, there was a second tent, and that's where all the drugs were contained. And so the court found that that was too attenuated to necessarily say there wasn't some other reason that they possessed the guns, because they simply weren't located close enough to the drugs to make that inference. And, again, it is going to be an inference. If it was direct evidence, it wouldn't be this component of the 924C. It would be the act of employment. It would be obvious. There would be someone seeing them pull out the gun in the course of a drug deal. So you're saying under existing precedent, if someone was arrested with drugs in one pocket, packaged for distribution, and with a handgun in another pocket, that a rational jury, from that alone, is going to be able to determine whether or not the person is guilty. Yes, Your Honor, that is what the precedent says. And, again, the case is drawing on the facts that you just provided, United States v. Lomax, which is cited at page 27 of my brief. It's a Fourth Circuit case, sufficient evidence when the defendant was found running down the street with a loaded semiautomatic to find that the guns were possessed in furtherance of the drug trafficking. Here, of course, we have these in an automobile. But, again, the proximity is exceptionally close. The gun was not only in the car, it was in the defendant's hand. So you've got the proximity to the defendant of the gun. You have the money. How would you use that as an inference? I would use the money as an inference of proof of his drug trafficking, that, in fact, he was drug trafficking. At the time? I think that's a reasonable inference, because who carries around almost $3,000 cash in their pocket that's so disorganized? How do you know he wasn't going to Neiman Marcus? He didn't say that when he was asked. He had no explanation for why he had all this money. It was so disorganized that it fell out of his pockets. It's scattered all over. It's 330 in the morning. He's in an area where there was testimony of high drug trafficking. He's engaged in a street altercation with a gun in his hand, and he flees police. So I think that all of those facts were clearly sufficient for the jury to reasonably conclude that, in fact, he was drug trafficking and he possessed the gun in connection with that or in furtherance of that. Thank you. Any further questions from the panel? No. Thank you. The only question I have, back to something you had argued, was that when he had this fight or altercation with someone in the street and he was waving the gun, you said you argued that the jury could infer that that that was in connection with a drug transaction, I guess. Is that right? But in terms of the general and furtherance precedent, I take it we wouldn't have to determine that to sustain the jury's verdict. No, Your Honor, I agree. That was a statement that I made in closing argument that was a reasonable inference from the evidence that the jury heard. But had that never even taken place, let's say that the police simply pulled the car over for some other reason and there never was an altercation and they found the evidence that they found, he fled, they found the cash and all the other evidence that we've discussed this morning, they could have come to the very same conclusion. That was a suggestion, putting the testimony into a context of what a reasonable inference could have been taking place. But I don't think that they had to find that in order to find the amount of the drugs that he had, the form of them, the money that he had and so on and so forth supported that he possessed the drugs with the intent to distribute them at some time. That's why he was in possession of them, not for personal use. Thank you. I understand that the instruction issue is a plain air issue. But as to whether this issue has been coming up, the answer is yes, it has. We have the Crouse case that says 924C turns on the defendant's intent. We have the Mann case where the court stated that was the case where you had the meth lab tent and the sleeping tent and where Judge Bidey said it, but Congress has not made mere possession when it occurs contemporaneously with drug manufacture a strict liability crime. And then you have more recently the Rios case where, again, the same principle is repeated. Well, they're saying there, though, more what isn't on the sufficiency of the evidence of it. I was more asking, are trial judges, you know, district judges regularly having lawyers when you're doing your instruction conference saying in furtherance is not explanatory, it's confusing, you know, I'm putting forth this instruction or, you know, you need to tell the jury more. Is this? I can't answer that question, but what we have is the circuit telling us this is what this crime turns on. It turns on intent. We have the Alfa-Rahim case that I cited, which is when you have the case law talking about a specific element and you're not giving instructions on that element, that may be plein air. And so I think that, you know, the problem here is even if you're not deciding this is a plein air failure to instruct case, intent is critical. And here we sort of have a different scenario than we sometimes have, which is that we have the gun attributable to the client. We're not contesting that on appeal, but the connection to the drugs is, in our view, very weak. And so it's a little bit of a flip situation from what you normally have in the 924C cases. But this was the — I think that the prosecutor is a little bit sort of cavalier about saying that they don't have to prove brandishing. This was tried as a brandishing case. My client has a two-year enhancement based on brandishing. They had to prove, either at sentencing or at the trial, that he brandished the gun to give him that bump. If this is not a brandishing — if this is a brandishing case and they actually had evidence that a drug deal transacted somewhere in the street there, then the intent issue would not be so critical, because it really becomes critical when you have a mere proximity case, when it's just a nexus case, which was what this case is on appeal. And that's the problem. That's why these things come together, that having drugs and having — well, disputed whether he's had drugs and had a gun. You don't have on appeal the sufficiency of the court's finding on the brandishing, do we? But that's not before us. No, because I just addressed it as the dare issue, but I think the court could take notice of that sort of as a plein air issue if brandishing wasn't proven. But that's why mere possession of each is not — if there is possession of the drugs, and we don't think they question that, I don't think that's sufficient. I have a question for you. Now, it's really the same question I asked your colleague from the government. If someone was arrested with drugs in one pocket that were packaged for distribution and with a handgun in the other pocket — so, you know, just keep it simple like that — if you have that case, is there precedent saying a rational jury could say that gun in the one pocket is in furtherance of the drug dealing in the other pocket? Well, I think that's a much closer case because you actually have — because you would actually have the possession. But I still think that what the case law requires is that mere possession of the two contemporaneously — that was the word that the court used in Mann — is not sufficient, that there has to be proof that the two are connected. But the jury has to determine that there's a connection, and you've got the jury instruction issue, but assuming that the instruction isn't plein air, would the finding — would the evidence in the hypothetical I've given, would that be sufficient evidence for a jury to convict? Well, I think that's a — the reason I — You can rewrite the instruction right now. I understand, and what you're painting is a much closer picture than what we have. But also, all of these cases, these 924 cases, are insufficiency cases, so it's coming up precisely in the way it is here, and it's precisely in that context that the court is saying mere contemporaneous proximity is not sufficient. And Rios, the court in Rios, talks about sort of specific and general facts that go to proving the nexus or intent. And so here we have the general facts of the expert testimony on that issue, but we don't have specific facts that connect the two. We don't have specific testimony that directly connects the two, and we don't have specific — that connects my client to the possession, and we don't have specific testimony that connects his intent to use the gun to further any possession, which becomes critical because this is a nexus case. Thank you. I have one other point. Val, your time is up. Okay. Thank you. Thank you. This matter will stand submitted at this time.
judges: T.G. Nelson, Gould, Callahan